[No. 14674. Department One. September 27, 1918.]

BUSH & LANE PIANO COMPANY, *Appellant,* v.
MRS. M. V. WOODARD *et al., Respondents.*[1]

HUSBAND AND WIFE — SEPARATE PROPERTY — WIFE'S CONTRACTS—
FAMILY EXPENSES—STATUTES. Where a wife purchased a piano on
her own behalf after her husband had refused to make or consent
to the purchase, expecting to pay for the same out of her separate
estate, it is not chargeable against the community or the separate
property of the husband as "expenses of the family and the educa-
tion of the children," within Rem. Code, § 5931, in view of other
provisions of the same act, giving the wife the right to deal with
her own separate property, and providing that the custody and
control of the community personal property shall be in the husband,
whose separate property shall not be liable for the wife's separate
debts.

SAME—SEPARATE PROPERTY — FAMILY EXPENSES — LIABILITY—AC-
TIONS—TRIAL. In such a case, whether the piano was a family ex-
pense was a question of law for the court and not for the jury, and
the husband was not liable unless he ratified the sale.

SAME—ACTIONS—ISSUES AND PROOF—ADMISSIONS — INSTRUCTIONS.
In an action against a husband and wife upon a promissory note al-
leged to be given as the sale price of a piano, which was admittedly
purchased by the wife for her separate use and not paid for, it is
error to instruct that her failure to sign the note warranted a
judgment in favor of both defendants, on the theory that the com-
plaint declared upon a note, where the issues were broadened to in-
clude her liability on her separate contract to buy the piano for
which the note was alleged to have been given.

Appeal from a judgment of the superior court for
Grant county, Hill, J., entered October 23, 1917, upon
the verdict of a jury rendered in favor of the defend-
ants, in an action on a promissory note. Reversed as
to respondent wife; affirmed as to respondent hus-
band.

*Charles E. Congleton,* for appellant.

FULLERTON, J.—This action was instituted to recover
upon a promissory note. In the complaint it is alleged

[1]Reported in 175 Pac. 329.

that the respondents, M. V. Woodard and J. C. Wood-
ard, are wife and husband; that the wife, at Ruff,
Washington, on April 26, 1916, made and delivered to
the appellant, for and on behalf of the community com-
posed of the respondents, a promissory note wherein
and whereby, in her own behalf and on behalf of the
community, she promised to pay to the appellant the
sum of $599 on November 1, 1916, together with inter-
est at the rate of six per cent per annum, and a reason-
able attorney fee in case suit or action should be insti-
tuted to collect the note. It is also alleged that the
note was given to evidence the purchase price of a
Victor Player piano, delivered on the date of the exe-
cution of the note; that the piano had been and is used
and enjoyed by the respondents jointly, and is a fam-
ily expense. The prayer is for a recovery against the
respondents, and each of them, for the amount of the
note with interest, and the further sum of $100 as at-
torney's fees.

The respondents answered, putting in issue by a gen-
eral denial all of the allegations of the complaint, save
and except the allegation that the respondents were
husband and wife. For a further and separate answer
they alleged that, on April 26, 1916, the respondent
wife entered into a conditional sale agreement with
the appellant for a Victor Player piano, at the agreed
price of $600; that the agreement was entered into on
her own account, she agreeing to pay for the same out
of her own separate property, and not for or on behalf
of the community composed of herself and her hus-
band; that the respondent J. C. Woodard expressly re-
fused to purchase the piano or to in any way become
liable therefor, and refused to permit the same to be
purchased for or on account of the community com-
posed of himself and wife; that, if the appellant has a
note evidencing the purchase price of the piano signed

by the wife, the same was obtained by fraud in manipulating the papers so as to secure her signature without her knowledge; and that the wife has no knowledge of having signed a note, and denies that she did sign the same. The prayer is that the appellant take nothing by its action and that the respondents recover costs. For reply the appellant admitted the execution of the conditional sale contract, and denied the other allegations of the affirmative answer.

The evidence introduced at the trial, which was had before a jury, tended to support in the main the respondents' version of the transaction. It is not disputed that the husband, when broached to purchase the piano, declined positively to make the purchase; that he did not know for some time after the transaction took place that his wife had entered into a contract for its purchase; that, both before and after that time, he thought the piano was kept in his house in the hope of a sale, and that he ordered the salesman to take it away. The evidence was sufficient, also, we think, to justify a finding that the wife purchased the piano on her own responsibility, intending to pay for it out of funds she expected to derive from property left her by a deceased brother; that this method of paying for the instrument was talked over between herself and the salesman, and that the salesman himself understood that it was from funds so derived that the purchase price of the piano would ultimately be paid. The wife denies her signature to the note, and while a comparison of the signature thereto with her admitted signatures casts a doubt upon her statement, there is testimony in the record tending to show that she signed the note without knowledge of its purport. There is no question, however, that she signed the contract and thus obligated herself to pay for the piano,

promising also in the contract to pay not only interest
upon the obligation assumed, but a reasonable attor-
ney fee in case suit or action should be instituted to
enforce its payment.  The verdict of the jury was for
the respondents, and from the judgment entered there-
on, this appeal is prosecuted.

It is the appellant's first contention that the obliga-
tion sued upon is a family expense chargeable upon
the property of both husband and wife, and that the
court erred in refusing to so charge the jury, and in
refusing to grant his motion for a judgment notwith-
standing the verdict.  The contention is founded upon
§ 5931 of Rem. Code, which reads:

"The expenses of the family and the education of
the children are chargeable upon the property of both
husband and wife, or either of them, and in relation
thereto they may be sued jointly or separately."

This section was enacted by the territorial legisla-
ture of 1881, and first appears in our official publica-
tions in the code of that year as a part of ch. 183.  An
examination of the chapter cited will show that the sec-
tion is a part of a general act relating to the rights
of married persons, and contains many other provi-
sions on the same subject-matter with which this sec-
tion must be read and construed.  Among other things,
it is provided that neither the husband nor the wife
is liable for the separate debts of the other, and that
contracts may be made by the wife and liabilities in-
curred by her which may be enforced against her to
the same extent and in the same manner as if she were
unmarried.  The act also defined what should consti-
tute community property of husband and wife, and
gave the husband the management and control of the
community personal property, with a like power of
disposition as he has of his own separate property, ex-
cept that he was not permitted to devise by will more

than one-half thereof. Other provisions of the act might be cited as bearing upon the point, but these are enough to show that it was not intended by the section in question to make every article of personal property purchased by the wife and used in connection with the family a family expense. This would be to read out of the act the provision giving the wife the right to deal with her own separate property, and would nullify the provision exempting the husband's separate property from the separate debts of the wife. The section must be read also in connection with the section of the act giving the husband the management, control and disposition of the community personal property. While he may not deny to his family the necessities of life or deny to his children an education, it is manifest that he must have a large voice in determining whether his separate property or the community property shall be liable when the proposed expenditure goes beyond necessities or is not for the education of the children. To hold otherwise would be to deny to him the right which the statute expressly gives him; namely, the right to manage, control and dispose of the community personal property. We cannot think, therefore, that the purchase of this instrument by the wife on her own behalf after the husband had declined to make the purchase, even though used by the family, makes it a family expense chargeable upon either the husband's separate property or the property of the community. The instrument does not partake of the nature, nor is it such a common ordinary household article as to be a subject of purchase by that spouse who can only contract on behalf of the family for the usual and ordinary requirements of the family. It follows that there was no error on the part of the court in refusing to charge the jury that the obligation sued upon was a family expense, or in

refusing to enter judgment for the appellant against the defendant husband notwithstanding the verdict.

It is true also the court refused to submit to the jury as a question of fact whether or not the obligation incurred in the purchase of the piano was a family expense, and that error is assigned thereon. But we find no error in this. In our opinion, the question in the particular case, because of the nature of the evidence, was one of law, not a question upon which opinions might reasonably differ. The court did charge the jury that, if they found that the husband had in any way ratified the purchase, they might find the community liable. This was as favorable to the appellant as the facts warranted.

We have not overlooked the citations from other jurisdictions holding that an obligation incurred by the purchase of a piano is a family expense when the piano is retained and kept for use by the family, and, under statutes containing provisions similar to our own, is chargeable to the property of both husband and wife. But an examination of the cases will show that they are from states where the property of married persons is not held under a tenure like our own, that is, states where the community doctrine of ownership does not obtain. Nor does any of them present the fact of a purchase by the wife over the protest and objection of the husband.

The court gave to the jury the further instruction:

"Should you find from the evidence that the defendant M. V. Woodard did not execute the note set forth in plaintiff's complaint herein, it will be your duty to return a verdict in favor of both defendants herein."

Doubtless the court based the instruction upon the fact that the complaint declared upon a note, and gave the instruction upon the theory that a failure to prove the execution of the note was a failure of proof war-

ranting a finding in favor of the wife as well as the husband. But we think the instruction erroneous nevertheless. The answer and reply broadened the issues made by the complaint, and warranted a recovery against the wife on the obligation assumed by the purchase even though it be true she did not knowingly execute the note. No fraud was perpetrated upon her. The most favorable view of the evidence is that she did not realize, when executing the papers evidencing the purchase of the piano, that she was executing a note. But by her own admission she executed the contract of purchase fully understanding its purport. It is conceded that the obligation assumed has not been met. Plainly, therefore, the appellant was entitled to a judgment against the wife, and the jury should have been so instructed by the court, or, failing in that, the court should have granted a judgment against her notwithstanding the verdict.

The judgment is reversed as to the respondent M. V. Woodard, and the cause remanded with instruction to enter a judgment against her according to the terms of the contract of purchase, the judgment to be executed upon her separate property. In other respects, the judgment will stand affirmed.

MAIN, C. J., MITCHELL, TOLMAN, and PARKER, JJ., concur.